**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**NEW YORK STATE TEAMSTERS CONFERENCE PENSION & RETIREMENT FUND by its Trustees, John A. Bulgaro, Michael S. Scalzo, Sr., Brian K. Hammond, George E. Harrigan, Chris Langan, Daniel W. Schmidt, Mark D. May and Charles W. Staab,**

**Plaintiff,**

**v.** **5:25-CV-703 (FJS/ML)**

**G&T AIR EXPEDITING SERVICE, INC. and any and all members of its controlled group,**

**Defendant.**

---

| **APPEARANCES** | **OF COUNSEL** |
| --- | --- |
| **PARAVATI, KARL, GREEN & DEBELLA, LLP**<br>520 Seneca Street - Suite 105<br>Utica, New York 13502<br>Attorneys for Plaintiff | **VINCENT M. DEBELLA, ESQ.**<br>**JOSEPH A. DETRAGLIA, ESQ.** |
| **G&T AIR EXPEDITING SERVICE, INC. and any and all members of its controlled group**<br>Defendant | **NO APPEARANCES** |

**SCULLIN, Senior Judge**

## I. INTRODUCTION[1]

Plaintiff filed its complaint against Defendant on June 4, 2025. *See* Dkt. No. 1, Complaint. After Defendant's time to answer or otherwise respond to the complaint had expired, Plaintiff filed a request for entry of default on August 20, 2025, *see* Dkt. No. 9, which the Clerk entered on the same day, *see* Dkt. No. 11. On October 29, 2025, Plaintiff filed the pending motion for entry of a default judgment against Defendant. *See* Dkt. No. 18.

In its complaint, Plaintiff alleges that Defendant "was a party to a collective bargaining agreement which, by its terms, required it to make contributions to the Pension Fund on behalf of its covered employees." *See* Dkt. No. 1, Complaint, at ¶ 22. Plaintiff further claims that Defendant "was also a party to a participation agreement which further required it to make contributions to the Pension Fund on behalf of its covered employees." *See id.* at ¶ 23. Therefore, Defendant "had 'an obligation to contribute' to the Pension Fund as that term is defined in 29 U.S.C. § 1392(a)." *See id.* at ¶ 24.

Furthermore, Plaintiff asserts that, "[o]n or about March 18, 2025, [Defendant] permanently ceased all covered operations under the Plan and/or permanently ceased to have an obligation to contribute to the Plan." *See id.* at ¶ 25. As a result, "as Plan sponsor, the Pension Fund determined that [Defendant] had completely withdrawn from the Plan and thereafter determined, and assessed, [Defendant] a withdrawal liability in the sum o[f] $3,592,734.09 in accordance with 29 U.S.C. §§ 1382, 1399(b)(1) & (c)(3)." *See id.* at ¶ 26.

---

[1] Plaintiff "New York State Teamsters Conference Pension & Retirement by its Trustees . . ." will be referred to throughout as either "Plaintiff" or "Pension Fund." Defendant "G&T Air Expediting Service, Inc. and any and all members of its controlled group" will be referred to throughout as either "Defendant" or "G&T."

Thereafter, in a letter dated April 14, 2025, "the Pension Fund notified [Defendant] of the assessed withdrawal liability in the amount of $3,592,734.09, demanded a single lump sum payment of same or, in the alternative, payment of the assessed withdrawal liability in interim monthly payments in accordance [with] the schedule included with said notice and demand for payment." *See id.* at ¶ 27. Plaintiff asserts that Defendant "has not made a request for review of any matter relating to the Pension Fund's determination of the assessed withdrawal liability [n]or has [Defendant] filed a demand for arbitration within the statutory time period prescribed by MPPAA, 29 U.S.C. §§ 1399(b)(2)(A) and 1401(a)(1)." *See id.* at ¶ 28.

"On Apri 10, 2025, the Pension Fund Trustee Co-Chairs declared a default under the rules adopted by the Plan since they determined there was a substantial likelihood that [Defendant] will be unable to pay the withdrawal liability given their creditworthiness." *See id.* at ¶ 29. The Co-Chairs' decision "was ratified by the Pension Fund Board of Trustees at a meeting held on May 29, 2025." *See id.* "By letter dated June 2, 2025, the Pension Fund notified [Defendant] of the default[.]" *See id.* at ¶ 30. Plaintiff asserts that Defendant's failure to "request a review or demand arbitration renders the liability immediately 'due and owing' to the Pension Fund as provided in MPPAA, 29 U.S.C. § 1401(b)(1)." *See id.* at ¶ 31. Therefore, according to Plaintiff, "the withdrawal liability is accelerated and [Defendant] owes the Pension Fund $3,592,734.09 plus interest, an additional award of the greater of interest or liquidated damages, costs and reasonable attorneys' fees as provided in the Plan rules and 29 U.S.C. § 1399(c)(2), and (c)(5); 1132(g)(2); 1401(b)(1); and 451(b)." *See id.* at ¶ 31.

## II. DISCUSSION[2]

### A. Liability

By failing to answer the complaint or oppose Plaintiff's motion for entry of a default judgment, Defendant is deemed to have admitted the factual allegations in the complaint. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (noting that "a party's default is deemed to constitute a concession of all well pleaded allegations of liability" (citation omitted)).

Whether to enter a default judgment, however, is committed to the court's discretion. *See Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015) (citation omitted). "Even where a defendant has admitted all well-pleaded facts in the complaint by virtue of default, a district court 'need not agree that the alleged facts constitute a valid cause of action,' and may decline to enter a default judgment on that ground." *Sadowski v. Urbanspotlite LLC*, No. 1:22-cv-00887 (BKS/DJS), 2023 WL 2838376, *2 (N.D.N.Y. Apr. 7, 2023) (Sannes, C.J.) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981))). In fact, "the Second Circuit has 'suggested that, prior to entering default judgment, a district court is "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law."'" *Id.* (quoting [*Mickalis Pawn Shop*, 645 F.3d at 137] (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009))).

---

[2] Reference to page numbers of documents in the record are to the page numbers that the Court's CM/ECF system creates and can be found in the top right corner of those pages.

"In a multiemployer pension plan, participating employers make regular contributions into a common fund that is regulated by ERISA." *Mar-Can Transp. Co., Inc. v. Local 854 Pension Fund*, 167 F.4th 581, 584 (2d Cir. 2026) (citing 29 U.S.C. §§ 1002(37), 1301(a)(3)). "Each employer's collective bargaining agreement with its workers' union designates the plan to which the employer will contribute and sets out the terms of those contributions." *Id.* (citing *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 605, 113 S. Ct. 2264, 124 L. Ed. 2d 539 (1993)). "The consolidated funds are available to pay benefits owed to employees of any participating employer." *Id.* at 585 (citations omitted).

"One of the MPPAA's key reforms was that it obligated a company withdrawing from a multiemployer plan to pay 'withdrawal liability.'" *Id.* at 586 (quoting 29 U.S.C. § 1381) (other citation omitted). "The term 'withdrawal liability' refers to 'an employer's obligation . . . to fund the old plan to the extent that that plan remains responsible [for providing benefits to the withdrawing employer's] employees upon their retirement." *Id.* (quoting *T.I.M.E.-DC, Inc.*, 756 F.2d at 946). The Second Circuit has explained withdrawal liability and "complete withdrawal" as follows:

> Withdrawal liability is calculated based on the MPPAA, and generally represents the portion of a multiemployer pension fund's "unfunded vested benefits" allocable to the withdrawing employer. A "complete withdrawal," which can trigger liability under the statute, occurs when an employer "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan," for example by going out of business, or renegotiating the terms of its CBA. When this occurs, "the entity maintaining the plan[] must determine the amount of the employer's withdrawal liability, notify the employer of the amount[,] and make a demand for payment."

*New York State Teamsters Conf. Pension & Retirement Fund v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 170-71 (2d Cir. 2022) (quoting 29 U.S.C. § 1381(b)(1); 29 U.S.C. § 1383(a);

[*I.L.G.W.U. Nat'l Ret. Fund v.*] *Levy Bros. Frocks, Inc.*, 846 F.2d [879,] 881) (other citations omitted).

"The initial notification to the employer must occur 'as soon as practicable after an employer's complete or partial withdrawal.'" *Div. 1181 Amalgamated Transit Union - New York Employees Pension Fund v. D & A Bus Co., Inc.* ("*D & A Bus Co., Inc.*"), 270 F. Supp. 3d 593, 607 (E.D.N.Y. Sept. 12, 2017) (quoting 29 U.S.C. § 1399(b)(1)) (other citation omitted). "Within 90 days after the employer receives the notification from the plan sponsor, the employer can request that the plan sponsor: (1) 'review any specific matter relating to the determination of the employer's liability and the schedule of payments;' (2) 'identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer;' and (3) 'furnish any additional relevant information to the plan sponsor.'" *Id.* (quoting 29 U.S.C. § 1399(b)(2)(A)). "Any dispute over the plan's calculation of withdrawal liability must be settled through arbitration, and if the employer fails to request arbitration within the statutory time frame, it is barred from challenging the amount of withdrawal liability calculated by the plan." *Trs. of Loc. 531 Pension Fund v. Flexwrap Corp.*, 818 F. Supp. 2d 585, 589 (E.D.N.Y. 2011) (citing 29 U.S.C. § 1401) (other citations omitted); *see also Gesualdi v. Seacoast Petroleum Prods., Inc.*, 97 F. Supp. 3d 87, 98 (E.D.N.Y. 2015) (concluding that, "[i]f an employer fails to initiate the arbitration process to contest the amount of withdrawal liability assessed against it, the employer has waived its right to arbitration, and a federal court will not make an independent determination that the plan sponsor's assessment was unreasonable" (quoting [*Vacca v. Bridge Chrysler Jeep Dodge, Inc.*, No. CV 06-3543,] 2008 WL 4426875, at *6, 2008 U.S. Dist. LEXIS 85223, at *15-16 (E.D.N.Y. Sept. 4, 2008)]); 29 U.S.C. §§ 1401(a)(1), (b)(1) ("If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan

sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor."). "[N]otwithstanding an employer's request for review of the plan's withdrawal liability determination, '[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of demand.'" *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 607 (quoting 29 U.S.C. § 1399(c)(2)); (citing *Seacoast Petroleum Prods., Inc.*, 97 F. Supp. 3d at 97)) (other citations omitted)

"In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). A "default" under section 1399 means "(A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." *Id.* Under section 1399(c)(5), "[w]hen a fund adopts a rule identifying . . . an event that it determines indicates a substantial likelihood that the employer will be unable to pay its withdrawal liability[,] the fund is entitled to an immediate payment of the outstanding amount of the assessed liability should the event occur." *Nat'l Ret. Fund v. InterContinental Hotels Grp. Res., LLC*, No. 19-cv-8018-GHW, 2020 WL 1922755, at *7 (S.D.N.Y. Apr. 21, 2020) (citing [29 U.S.C.] § 1399(c)(5); *Ret. Fund of Fur Mfg. Indus. v. Robert Goldberg Furs, Inc.* 754 F. Supp. 356, 357 (S.D.N.Y. 1991) (stating that a § 1399(c)(5)(B) default entitles the fund to immediate payment of assessed withdrawal liability)) (footnote omitted).

"Generally, where a plan sponsor seeks withdrawal liability payments, it must 'show only that it complied with statutory procedural requirements.'" *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 608 (quoting *Trustees of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc.*, No. 03 Civ. 4530, 2004 WL 67480, at *2 (S.D.N.Y. Jan. 15, 2004)) (other citation omitted). "Thus, '[t]he plan sponsor must: (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule.'" *Id.* at 608-09 (quoting *Steve Petix Clothier, Inc.*, 2004 WL 67480, at 2) (other citation omitted).

The Trustees are fiduciaries of the Pension Fund as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). *See* Complaint at ¶ 6. "The Pension Fund, as an employee benefit fund, was created and exists pursuant to an Agreement and Declaration of Trust entered into between participating employers and union locals affiliated with the International Brotherhood of Teamsters ("Teamsters") and is a 'multi-employer plan' as defined in 29 U.S.C. § 1002(37)(A)." *See id.* at ¶ 4. Defendant is an employer under Sections 3(5) and 4203(a) of ERISA, 29 U.S.C. §§ 1002(5), 1383(a).

Defendant "was party to a collective bargaining agreement which, by its terms, required it to make contributions to the Pension Fund on behalf of its covered employees." *See* Complaint at ¶ 21. Defendant "was also a party to a participation agreement which further required it to make contributions to the Pension Fund on behalf of its covered employees." *See id.* at ¶ 23. "On or about March 18, 2025, G&T permanently ceased all operations under the Plan and/or permanently ceased to have an obligation to contribute to the Plan." *See id.* at ¶ 25. "Consequently, as Plan sponsor, the Pension Fund determined that G&T had completely

withdrawn from the Plan and, thereafter, determined, and assessed, G&T a withdrawal liability in the sum o[f] $3,592,734.09 in accordance with 29 U.S.C. §§ 1382, 1399(b)(1) & (c)(3)." *See id.* at ¶ 26. "By letter dated April 14, 2025, the Pension Fund notified G&T of the assessed withdrawal liability in the amount of $3,592,734.09, demanded a single lump sum payment of same or, in the alternative, payment of the assessed withdrawal liability in interim monthly payments in accordance [with] the schedule included with said notice and demand for payment." *See id.* at ¶ 27; *see also* Dkt. No. 18-12, Stilwell Declaration, at ¶ 10 (citing DeBella Decl. at Exh. F). Defendant did not make "a request for review of any manner relating to the Pension Fund's determination of assessed liability. Nor [did] G&T file[] a demand for arbitration within the statutory time period prescribed by MPPAA, 29 U.S.C. §§ 1399(b)(2)(A) and 1401(a)(1)." *See id.* at ¶ 28.

"On May 29, 2025, the Pension Fund Trustees declared an insecurity default under 29 U.S.C. § 1399(c)(5)(B) and the Pension Fund's Policies and Procedures for Contributing Employers given G&T's creditworthiness and the substantial likelihood that it would be unable to pay its debts as they became due." *See* Dkt. No. 18-12, Stilwell Declaration, at ¶ 11 (citing Pension Fund Trustees' May 29, 2025 meeting attached to DeBella Decl. as Exh. G). "By letter dated June 2, 2025, [Mr. Stilwell] notified G&T of its default under 29 U.S.C. § 1399(c)(5)(B) and that the full outstanding amount of the withdrawal liability of $3,592,734.09 was immediately due and owing[.]" *See* Dkt. No. 18-12, Stilwell Decl., at ¶ 12 (citing Pension Fund letter dated June 2, 2025 attached to DeBella Decl. as Exh. H).

"In response to these notices and demands for payment, not only did G&T fail and/or refuse to remit any payment of the withdrawal liability, in whole or part, or otherwise cure its deficiency, G&T also failed to request a review of the Pension Fund's determination of the

assessed withdrawal liability or demand arbitration to contest any determination of the Pension Fund." *See* Dkt. No. 18-12, Stilwell Decl., at ¶ 13. "Therefore, the withdrawal liability is accelerated and G&T owes the Pension Fund $3,592,734.09 plus interest, an additional award of the greater of interest or liquidated damages, costs and reasonable attorneys' fees as provided in the Plan's rules and 29 U.S.C. § 1399(c)(2), and (c)(5); 1132(g)(2); 1401(b)(1); and 1451(b)." *See* Complaint at ¶ 31; *see also Trs. of Loc. 813 Pension Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 23-CV-08493 (LDH/SIL), 2024 U.S. Dist. LEXIS 138692, at *11-12 (E.D.N.Y. Aug. 5, 2024) (recommending accelerated withdrawal liability where the fund adopted withdrawal liability procedures and determined that there was a substantial likelihood that the defendant would be unable to pay its withdrawal liability pursuant to those procedures), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 171780 (E.D.N.Y. Sept. 23, 2024).

Based on this record, the Court concludes that Plaintiff is entitled to a default judgment with respect to its withdrawal liability claim against Defendant.

**B. Damages**

Having established that Plaintiff is entitled to a finding of liability with respect to its withdrawal liability claim against Defendant, the Court considers the documentary evidence Plaintiff has submitted to support its request for damages. "In determining the categories of damages to which Plaintiff is entitled, the Court points out that '"[a]ny failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of [29 U.S.C. § 1145])."'" *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 614 (quoting *Trustees of the Local 138 Pension Fund v. Tax Trucking Co.*, No. 09 CV 3041, 2015 WL 13446776, at *3 (E.D.N.Y. June 2, 2015), *report and*

*recommendation adopted sub nom, Trustees of Local 138 Pension Fund v. Tax Trucking Co.*, 2017 WL 2779685 (E.D.N.Y. June 26, 2017) (quoting 29 U.S.C. § 1451(b))).

***1. Withdrawal liability***

Where the damages sought "consist, in part, of delinquent withdrawal liability payments and where the employer has otherwise failed to timely request arbitration, courts have the discretion to' adopt[] [] the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated." *D & A Bus. Co., Inc.*, 270 F. Supp. 3d at 613 (internal quotations and citation omitted) (collecting cases); *see also Trustees of Local 813 Pension Trust Fund v. A.A. Danzo Sanitation, Inc.*, No. 23-CV-08493 (LDH) (SIL), 2024 WL 4250355, at *3 (E.D.N.Y. Aug. 5, 2024) (stating that, "[i]ndeed no documentation is required to support a finding of withdrawal liability if the defendant fails to arbitrate" (collecting cases)); *Pavers & Rd. Builders Dist. Council Pension Fund v. Nico Asphalt Paving, Inc.*, 248 F. Supp. 3d 374, 378 (E.D.N.Y. 2017) (finding that, "[i]f arbitration is not commenced within the statutory timeframe, the plan's determination of the employer's withdrawal liability becomes final and must be paid in accordance with the schedule set forth in the initial notice." (citing 29 U.S.C. § 1401(b)(1))).

Plaintiff seeks $3,592,734.09 in withdrawal liability. *See* Dkt. No 1, Complaint, at ¶ 31. The Court concludes that Plaintiff has sufficiently established the amount of withdrawal liability owed in this case. *See Daniello v. Planned Sys. Integration ltd.*, No. CV-07-1729 (RRM) (VVP), 2009 WL 2160536, at *5 (E.D.N.Y. July 17, 2009) (accepting recommendation's finding that the plaintiff was entitled to the withdrawal liability it assessed against the defendant "even though the plaintiffs here have submitted no documentation as to how the figure was calculated" because the defendant did not initiate arbitration as to the plaintiff's determination of withdrawal

liability); *Bd. of Trs. of the UFCW Loc. 174 Pension Fund v. Jerry WWHS Co.*, No. 08-CV-2325 (ARR) (JO), 2009 WL 982424, at *4 (E.D.N.Y. Apr. 10, 2009) (accepting recommendation's finding that the defendant is liable for the amount of withdrawal liability "[a]lthough the record plainly does not suffice to support the calculation on which the Trustees rely" and there lacked "documentary support" for the amount of withdrawal liability because the defendant waived its right to contest the amount of withdrawal liability); *Loc. 1922 Pension Fund v. Broadway Elec. Supply, Co., Inc.*, No. CV-19-2344 (JS) (AKT), 2020 WL 1931635, at *11 (E.D.N.Y. Mar. 18, 2020) (recommending the award of plaintiffs' requested amount of withdrawal liability even though they "do not explain how that figure was calculated" because "'[t]he law is unforgiving where, as here, an employer fails to take action in a timely manner after being notified'" (quoting *Labarbera v. Utd. Crane & Rigging Servs., Inc.*, Nos. 08-CV-3274, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011))), *report and recommendation adopted*, No. 19-cv-2344, (Electronic Order Adopting Report and Recommendation) (E.D.N.Y. May 4, 2020).

***2. Interest and Liquidated Damages***

Plaintiff seeks interest at a rate of 11 percent from June 12, 2025, the date the first payment was not timely made, through October 29, 2025, the date of filing of the motion for default judgment, pursuant to 29 U.S.C. §§ 1132(g)(2)(B) and (E), the parties' participation agreement, and Plan documents. *See* Dkt. No. 18-3, Statement of Amount Due, at paragraph B.

Furthermore, Plaintiff seeks an additional award of 10% liquidated damages on the outstanding withdrawal liability. *See id.* at paragraph C; *see also D & A Bus Co., Inc.*, 270 F. Supp. 3d at 615-16 (awarding liquidated damages of 20 percent and interest on withdrawal

liability); *UFCW Loc. One Health Care Fund v. Greene Great Am., Inc.*, No. 6:23-cv-1441 (BKS) (MJK), 2025 WL 1506163, *5 (N.D.N.Y. May 27, 2025) (same).

Based on Plaintiff's submissions, the Court concludes that Plaintiff is entitled to the interest and liquidated damages it seeks.

***3. Attorney's fees and costs***

Plaintiff seeks and is entitled to recover the attorney's fees and costs it incurred in connection with its efforts to collect Defendant's withdrawal liability in this case. *See* Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) and Plaintiff's Rules; *see also* Dkt. No. 1, Complaint, at ¶ 31 ("G&T owes the Pension Fund . . . and additional award of . . . reasonable attorneys' fees as provided in the Plan's rules and 29 U.S.C. § 1399(c)(2) and (c)(5); 1132(g)(2); 1401(b)(1); and 1451(b)").

District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case[.]" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008). "In calculating attorney's fees, the district court must first determine the 'lodestar -- the product of a reasonable hourly rate and the reasonable number of hours required by the case -- [which] creates a presumptively reasonable fee.'" *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks omitted)). This approach requires a district court to set "a reasonable hourly rate, taking account of all case-specific variables," and to determine "the appropriate billable hours expended." *Lilly v. City of New York*, 934 F.3d 222, 229-30 (2d Cir. 2019) (quoting [*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182,] 189-90 [(2d Cir. 2008)]); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)

(stating that "[u]nder this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals"). "The reasonable hourly rate should be '"what a reasonable, paying client would be willing to pay," given that such a party wishes to spend the minimum necessary to litigate the case effectively.'" *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 289-90 (2d Cir. 2011) (quotation omitted).

The Supreme Court has explained that district courts should generally use "the prevailing market rates in the relevant community" in determining the reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Second Circuit has interpreted the "community" to mean "the district where the district court sits." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (citing *Polk v. N.Y.S. Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)); *see also Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 200 (N.D.N.Y. 2019) (citation omitted).

In *Malik v. Ayuryoga, Inc.*, No. 1:25-cv-00076 (AMN/MJK), 2025 WL 2029237 (N.D.N.Y. July 21, 2025), a court in this District noted that "'[a] review of cases in this District indicates that the following hourly rates (or rate ranges) are reasonable: $250-$350 for partners; $165-$200 for associates; and $80-$95 for paralegals, legal assistants, and other paraprofessionals.'" *Id.* at *5 (quoting *UFCW Local One Health Care Fund v. Greene Great American*, 6:23-cv-1441 (BKS/MJK), 2025 WL 1506163, at *5 (N.D.N.Y. May 27, 2025)); *see also Gallagher v. United Court Sys. of State of New York*, 3:18-CV-1476 (GTS/ML), 2025 WL 3761760, *10 (N.D.N.Y. Dec. 30, 2025) (same).

Plaintiff has submitted a detailed accounting of the costs incurred and the discreet work that its attorneys performed, the time expended on those tasks, and who performed those tasks. *See* Dkt. Nos. 18-11, Costs and Attorney's Fees. Plaintiff requests $10,500.00 in attorney's fees,

representing 30 hours of attorney time at the hourly rate of $350.00. *See id.* The Court exercises its discretion to award attorney fees consistent with the award of attorney's fees in this District as explained below. *See Barfield*, 537 F.3d at 151.

Plaintiff's attorney, Vincent M. DeBella, is a partner at Plaintiff's counsel's law firm, has been employed at that firm since 1988, and has "been litigation counsel to the Pension Fund since in and around that date." *See* Dkt. No. 18-1, Declaration of Vincent M. DeBella, at ¶ 28. Furthermore, his "practice is primarily in ERISA litigation matters." *See id.*

Plaintiff's attorney, Joseph A. DeTraglia, has been of counsel to Plaintiff's counsel's law firm since 2024." *See* Dkt. No. 20, Supplemental Declaration of Vincent M. DeBella, at ¶ 3. In addition, "Mr. DeTraglia was admitted to the bar of the U.S. District Court for the Northern District of New York in March 1996 and has practiced in federal and state courts for more than 30 years primarily in labor, employment, and employee benefits matters, including numerous Employee Retirement Income Security Act of 1974, as amended ("ERISA") cases." *See id.* at ¶ 4. Finally, "Mr. DeTraglia's legal career includes decades of experience as a law firm associate and partner, as a corporation general counsel, and as a hearing officer and counsel for a state labor agency." *See id.* at ¶ 5.

The Court finds that the 30 hours expended preparing this motion for default judgment are reasonable and that the $350 per hour rate that Plaintiff seeks is within the hourly rates found reasonable in this District for attorneys with Mr. DeBella's and Mr. DeTraglia's experience.

In addition, having reviewed Plaintiff's request for costs in the amount of $405.00 for the filing of the complaint, *see* Dkt. No. 1, and $40.00 for service of process, *see* Exhibit 18-3 at 2, which are supported by documentary evidence, the Court grants Plaintiff's request.

Accordingly, the Court awards Plaintiff $10,500.00 in attorney's fees and $445.00 in costs.

***4. Pre- and Post-Judgment Interest***

Plaintiff seeks an award of pre-judgment interest at the rate of 11% per annum from June 12, 2025, the date the first payment was not timely made through October 29, 2025, the date of the filing of the motion for default judgment pursuant to 29 U.S.C. §§ 1132(g)(2)(B) and (E), the parties' participation agreement and Plan documents, *see* Dkt. No. 18-13, Statement of Amount Due at ¶ B, and prejudgment interest of 11% per annum from October 29, 2025, to the date Judgment is entered at a rate of $1,082.74 per diem, *see id.* at ¶ D.

"Interest on withdrawal liability runs from the initial date the withdrawal liability was due," *Finkel v. Zizza & Assocs.*, No. 12-CV-4108 (JS) (ARL), 2023 WL 8455937, at *13 (E.D.N.Y. Dec. 6, 2023) (citing *Ferrara v. Heavy Constr. Lumber, Inc.*, No. 21-CV-2562, 2022 WL 1085380, at *5 (E.D.N.Y. Jan. 5, 2022) (parenthetical omitted)), and continues until judgment is entered, *see Bd. of Trs. of the UFCW Loc. 50 Pension Fund v. Baker Hill Packing Inc.*, No. 13-CV-1888 (JS) (SIL), 2015 WL 867013, at *11 (E.D.N.Y. Feb. 27, 2015) (noting that "since [the defendant's] withdrawal liability remains delinquent, daily interest continues to accrue until judgment is entered (citations omitted)), *report-recommendation adopted*, 2015 WL 867013, at *1 (E.D.N.Y. Feb. 27, 2015). The applicable interest rate on unpaid [withdrawal liability] "shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2); *Bd. of Trs. of Loc. 810 Affiliated Pension Fund v. Joseph Eletto Transfer, Inc.*, No. 23-CV-1616 (DLI) (MMH), 2024 WL 628808, at *6 (E.D.N.Y. Feb. 1, 2024).

In this case, "[w]ithdrawal liability shall be calculated in accordance with the 'presumptive method' pursuant to 29 U.S.C. §§ 1391(b)(1) and (f) and 29 C.F.R. § 4211.31." *See* Dkt. No. 18-6, Policies and Procedures for Contributing Employers, at 12.

Therefore, the Court finds that Plaintiff is entitled to prejudgment interest from June 12, 2025, the date the first payment was not timely made, to the date of Judgment at the rate of 11%. Plaintiff is also entitled to post-judgment interest as a matter of right at the statutory rate prescribed by 28 U.S.C. § 1961(a). *See Genworth Life & Health Ins. Co. v. Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008).

## III. CONCLUSION

After reviewing the entire file in this matter, Plaintiff's submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for an entry of a default judgment, *see* Dkt. No. 18, is **GRANTED**; and the Court further

**ORDERS** that the Clerk is directed to enter judgment in favor of Plaintiff against Defendant as set forth in the attached Statement of Amount Due.

**IT IS SO ORDERED.**

Dated: November 18, 2026
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

**STATEMENT OF AMOUNT DUE**

| | |
|---|---|
| Employer withdrawal liability as determined and assessed by the Pension Fund in accordance with the terms of the parties' participation agreement and Plan documents, and pursuant to 29 U.S.C. §§ 1132(g)(2)(A) and (E) and 29 U.S.C. § 1145 | $3,593,734.09 |
| Interest at the Pension Fund's adopted Plan rate of 11% from June 12, 2025 (the date the first payment was not timely made) through October 29, 2025 (the date the motion for default judgment was filed) pursuant to 29 U.S.C. §§ 1132(g)(2)(B) and (E), the parties' participation agreement, and Plan documents, calculated as follows:<br><br>June 12, 2025 to October 29, 2025 = 139 days<br>$3,592,734.09 x 11% simple interest = $395,200.75 interest per year.<br>$395,200.75 / 365 days/year = $1,082.74 interest per day<br>$1,082.74 x 139 days = $150,500.86 | $150,500.86 |
| An additional award of the greater of 11% accrued interest on the determined withdrawal liability in the amount of $150,500.86 **or** 10% liquidated damages on the outstanding withdrawal liability in the amount of $3,592,734.09 ($3,592,734.09 x 10%) pursuant to 29 U.S.C. § 1132(g)(2)(C)(i), the parties' participation agreement and Plan documents | $359,273.41 |
| Pre-judgment interest of 11% per annum from October 29, 2025 (the date of filing of the default judgment motion) to the date of Judgment at $1,082.74 per diem | $1,082.74 per diem |
| Attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(2)(D) and (E), the parties' participation agreements, and Plan documents:<br><br>Attorney's fees $10,500.00<br>Filing fee 405.00<br>Service of Process Fee 40.00 | $10,945.00 |
| Post-judgment interest from the date of Judgment at the statutory rate prescribed by 28 U.S.C. § 1961(a) | |